No. 29,753.

Lulu G. Reese, *Appellee*, v. W. L. Reese, *Appellant.*

(295 Pac. 690.)

Opinion filed February 7, 1931.

*A. L. L. Hamilton, R. C. Woodward,* both of El Dorado, *Robert C. Foulston* and *George Siefkin,* both of Wichita, for the appellant.

*H. W. Hart, Glenn Porter, Enos E. Hook, Edward H. Jamison* and *Getto McDonald,* all of Wichita, for the appellee.

The opinion of the court was delivered by

Marshall, J.: In this action the plaintiff seeks an accounting with the defendant for property accumulated by them while they lived together as husband and wife without being married. Judgment was rendered, giving to the plaintiff $22,000 to be paid to her by the defendant, which added to $18,000 which she then held made an award to her of $40,000. The defendant appeals.

The court made findings of fact and conclusions of law, the parts of which material to be considered were as follows:

"One. On August 8, 1887, the plaintiff, whose name was then Lizzie Bonshire, and who was then about eighteen years of age, married John F. Hauch, in the city of Pittsburgh, Pennsylvania, and lived with him there for a period of about one year, when they separated. The mother of John Hauch informed Mrs. Hauch that her husband had gotten a divorce from her sometime prior to .the year 1890. Mr. Hauch never obtained a divorce from her, but on the 25th day of May, 1928, Mrs. Reese, formerly Mrs. Hauch, obtained a divorce from Mr. Hauch in the district court of Sedgwick county, Kansas.

"She never knew until the month of January, 1928, that Hauch had not

obtained a divorce from her, and during this time, and ever since a short time after their separation, she believed that he had obtained a divorce from her.

"Two. On the 13th day of August, 1890, Mrs. Hauch and Mr. Reese were married, and they lived together as husband and wife until the 25th day of September, 1919. When she married Mr. Reese she believed that she was a single woman, and entered into the marriage relation in good faith.

"On the 25th day of September, 1919, the defendant filed a petition for divorce against Lulu C. Reese in the district court of Butler county, Kansas. A waiver of service and entry of appearance signed by the plaintiff was filed in that case, and on January 17, 1920, a divorce was granted to the defendant, W. L. Reese.

"In this divorce action all property rights between Mr. and Mrs. Reese were settled. At the time the divorce in Butler county was granted, Mrs. Reese was living in Texas, and from there she moved to California, where she stayed until March, 1921.

"Mrs. Reese believed that the entry of appearance in the divorce case had been destroyed and she did not know that a decree of divorce had been rendered until sometime in the year 1922.

"On January 27, 1920, she wrote Mr. Reese, asking that the papers in the divorce case be sent to her at El Paso, Texas, but they were not sent. At a later date she again asked for the papers, and on February 2, 1920, Mr. Reese answered her that he had not yet obtained the papers.

"Three. Mrs. Reese returned from California in March, 1921, and she and Mr. Reese resumed living together as man and wife, and from that time until December, 1927, she and Mr. Reese lived together as husband and wife. Mrs. Reese took care of the house and assisted her husband in the usual and ordinary manner that a wife assists her husband in taking care of the home for him. She was industrious, and did the cooking of his meals and the washing of his clothes for him a great deal of the time.

"Although frequently, from the time when Mr. and Mrs. Reese resumed living together as husband and wife in March, 1921, and until they separated in December, 1927, they had many quarrels and were at times very unhappy, nevertheless Mrs. Reese acted the part of a wife as well as she could under the circumstances.

"During this time, and after she had learned that Mr. Reese had secured a divorce from her, they signed the following statement:

"'I, W. L. Reese, and Lulu G. Reese, do consider ourselves as much married to-day as ever after living together about forty years.
(Signed)      'W. L. REESE.
'LULU G. REESE.
'2110 E. Second St.'

"Mr. Reese promised Mrs. Reese numerous times that he would marry her, but this was never done. In June, 1922, he went to Pennsylvania, where Mrs. Reese was on a visit, for the express purpose of marrying her, but refused to do so. He never did marry her after he was divorced from her.

"Four. From sometime in the year 1921, when Mr. and Mrs. Reese commenced again living together as husband and wife, and until December, 1927,

when they separated, Mr. Reese was very cruel to her, beat her up and threatened to kill her.

"Five. During the time while Mr. and Mrs. Reese lived together as husband and wife, and prior to the granting of the decree of divorce in Butler county, Kansas, there was born to them, three children, two of whom died, and the remaining child, George Reese, is the only living child. George Reese is married and has children which are grandchildren of Mr. and Mrs. Reese.

"Six. In January, 1928, and within ten days from the time of the separation of the plaintiff and defendant, the defendant married another woman.

"Seven. After living with the defendant as his wife since their marriage in 1890, and discharging the duties imposed upon her as his wife, the plaintiff is broken in health and has spent a large part of the last two years in sanitariums and hospitals by reason of her physical condition.

"Eight. When Mrs. Reese returned from California in March, 1921, she was worth $4,500; and Mr. Reese was worth $6,000. Mrs. Reese received $2,000 of this $4,500 from her sister who died and willed it to her.

"Ninth. During the period from 1919 to 1927, while plaintiff and defendant were living together as husband and wife, a large amount of property was acquired, the title to which was taken in the name of the defendant, W. L. Reese, who claimed that the property was his. The major properties in the order of acquisition, the method of purchase, and the income therefrom are as follows:

"Ten. On February 1, 1928, the defendant was worth $94,000 and the plaintiff was worth $18,000.

"Eleven. When the plaintiff and defendant were divorced in 1920, the plaintiff had approximately $3,800 and the defendant approximately $6,000.

"Twelve. The property of the plaintiff and defendant was each kept in his or her own name, with the sole exception of the Elk county farm, which was in their joint names, and the plaintiff deeded that property to the defendant in 1927.

"Thirteen. In addition to the stocks transferred to the plaintiff, the plaintiff drew money from the checking account of the defendant from 1922 to 1927, in the total amount of $5,586.64.

"Fourteen. After the plaintiff and defendant commenced living together again, Mrs. Reese from time to time loaned her husband various sums of money which he used in his business transactions. At one time she loaned him $4,000, for which he gave her his note. He afterwards paid this note with interest. This money was used by Mr. Reese in purchasing the McLaughlin lease described in number 9, III above.

"Fifteen. The court allows the plaintiff, Mrs. Reese, $22,000, to be paid to her by the defendant. This amount with the $18,000 she now has will make her worth $40,000. Interest at six per cent per annum on this sum will yield her $200 per month. On this income she ought to live very comfortably.

"Conclusions of Law.

"One. No allowance can be made to the plaintiff, Mrs. Reese, for services rendered to Mr. Reese prior to their divorce, January 17, 1920, by reason of the supposed marriage existing between them.

"Two. By reason of Mr. and Mrs. Reese resuming the marriage relation, after her return from California in March, 1921, when she did not know that Mr. Reese had obtained a divorce from her, and by reason of their agreeing that they were as much married as ever, after she had learned that he had obtained a divorce, and by reason of her furnishing him money and rendering him the services of a wife, she is entitled to recover of him, a part of the accumulations, which were in his name, from March, 1921, to December, 1927, when they separated.

"Mr. Reese has not the right to retain all of the property that was in his name merely because it was in his name, when Mrs. Reese lived with him as his wife and rendered services as set forth in the findings of fact herein."

1. The defendant in his brief says:

"First: No marriage ceremony was gone through by the parties, and the appellee, due to a previous marriage, could not contract any marriage with the appellant. On these facts can the appellee recover in this action upon an implied contract for services as a housewife rendered to the appellant while their relationship existed?

"Second: When parties live together, knowing they are not married and there is no partnership agreement, can either recover property standing in the name of the other?

"Third: Was there any evidence to authorize a judgment based on calculations as to the amount upon which the appellee could live comfortably for the rest of her days? Does not such an allowance amount to a judgment for permanent alimony?"

The defendant does not squarely meet the situation presented by the record. The plaintiff is not seeking to recover as the wife of the defendant. She is not seeking to recover from the defendant on a contract. She is not seeking to recover property held by the defendant in his own right. She is seeking to recover a part of the property which she assisted in accumulating and which justly belongs to her.

We quote two paragraphs of the syllabus and part of the opinion in *Fuller v. Fuller*, 33 Kan. 582, 7 Pac. 241, as follows:

"Where a man innocently marries a woman who has a husband living, he may afterward maintain an action against her in equity and independent of the statutes relating to divorce and alimony, to have the supposed and colorable marriage declared to be a nullity.

"And in such an action the defendant is not entitled to recover permanent alimony." (Syl. ¶¶ 1, 2.)

"It is our opinion, however, that in all judicial separations of persons who have lived together as husband and wife, a fair and equitable division of their property should be had; and the court in making such division should inquire into the amount that each party originally owned, the amount each party received while they were living together, and the amount of their joint accumulations. Of course, these matters are not conclusively controlling." (p. 586.)

In *Werner v. Werner*, 59 Kan. 399, 53 Pac. 127, this court said:

"In an action wherein the marriage between two parties is found to be void because one of the parties had a husband or wife living at the time of the invalid marriage, and a decree of nullity is entered, the court, while it cannot grant alimony, as such, has authority to make an equitable division of property jointly accumulated by the parties while they lived together as husband and wife." (Syl.)

2. The defendant says that "certain findings of fact are not supported by evidence and are contrary to the evidence." Where did the court get its information on which to base its findings of fact? The abstracts have been read and this court is unable to agree with the contention of the defendant. This claim is so often made and so seldom sustained that the court is justified in refusing to discuss the proposition except where it is apparent there was no evidence introduced of any kind which tended in any way to prove an essential fact necessary to be found. That is not the situation in the present case. For that reason the evidence is not recapitulated.

3. The defendant complains of a statement made by the court in the fifteenth finding of fact—"On this income she ought to live very comfortably." That, of course, is not a finding of fact. It was a casual remark, a prediction, and had nothing to do with the judgment. There was no error in it.

The judgment is affirmed.